Filed 9/19/22 In re O.S. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re O.S. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. Y.A., Defendant and Appellant. | E078258 (Super.Ct.No. J290702-05) OPINION |

APPEAL from the Superior Court of San Bernardino County. Steven A. Mapes, Judge. Affirmed in part, reversed in part, and remanded with directions

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Pamela J. Walls, Special Counsel, for Plaintiff and Respondent.

Y.A. appeals from orders asserting dependency jurisdiction over her children, formally removing them from her custody, and finding that the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) did not apply. She contends that the ICWA finding was erroneous, because Children and Family Services (CFS) had not fully carried out its duty to inquire into whether the children were or might be Indian children. CFS does not argue otherwise. It argues only that the asserted error was harmless. However, because this is an appeal from jurisdictional/dispositional orders, not from an order terminating parental rights, CFS has an ongoing duty of inquiry. Under these circumstances, the appropriate appellate remedy is to reverse the ICWA finding, regardless of prejudice.

I

STATEMENT OF THE CASE

Y.A. (mother) and A.S., Jr. (father) have four children together, all boys: G.S., born in 2011; J.S., born in 2016; I.S., born in 2020; and O.S., born in 2021.

When O.S. was born, he tested positive for methamphetamine. The mother had a history of drug abuse. The father was incarcerated. The mother reported that the father had engaged in domestic violence.

Accordingly, in September 2021, CFS detained the children and filed dependency petitions concerning them. They were placed with the paternal aunt (D.L.).

In November 2021, at the jurisdictional/dispositional hearing, the juvenile court found that it had jurisdiction based on failure to protect and, as to the father only, failure

2

to support. (Welf. & Inst. Code, § 300, subds. (b), (g).)[1] It formally removed the children from the parents' custody. It ordered reunification services for the mother but bypassed reunification services for the father. It also found that ICWA did not apply.

## II

## FAILURE TO CARRY OUT THE ICWA DUTY OF INQUIRY

The mother contends that CFS failed to carry out its duty of inquiry under ICWA and related federal and state law, and that, as a result, the juvenile court erred by finding that ICWA did not apply.

A.     *Additional Factual and Procedural Background*.

Around the time of the detention, a social worker asked the mother, the father, and the paternal aunt (D.L.) if they had any Indian ancestry. They all said no.

At the detention hearing, the mother said that, as far as she knew, neither she nor the father had Indian ancestry. She also filed a "Parental Notification of Indian Status" (ICWA-020) form saying that she had no Indian ancestry. The juvenile court ordered the father to complete an ICWA-020 form, and an ICWA-020 form was sent to the father, but he never returned it.

---

[1]     All further statutory citations are to the Welfare and Institutions Code, unless otherwise indicated.

3

On a "Family Find and ICWA Inquiry" (CFS 030 A) form, the mother listed the names and phone numbers of three family members — a grandmother (F.),[2] a maternal aunt (Bi.A.), and a "repres[en]tative" (S.). In response to, "Do you have/may have Native American [a]ncestry?," she checked "Unknown." The next space on the form said, "If yes complete the following sections: Contact [i]nformation of relatives who know of Native American ancestry information." Having not checked yes, she left this blank.

A person describing herself as the child's cousin (P.V.)[3] also filled out a CFS 030 A form. She listed the names and phone numbers of the same maternal aunt (Bi.A.) and a second maternal aunt (Br.A.). She said she herself had no Indian ancestry.

A social worker spoke to the paternal grandmother (L.V.) on the phone to give her notice of the jurisdictional/dispositional hearing. There is no indication that he made any ICWA inquiry at that time. He tried to give notice to one maternal aunt (Bi.A.), but the phone number that he had was not hers.[4]

---

[2] The grandmother was identified on the form as F. (no last name). However, the maternal grandmother's name was M.A., and the paternal grandmother's name was L.V.

F. was a typically (but not invariably) male name. The mother's counsel speculates that perhaps F. is a grandfather, misidentified on the form as a grandmother.

[3] The mother, however, described P.V. as merely a "family friend."

[4] The mother and the cousin gave the same phone number for Bi.A., except that one digit that was a "7" on the cousin's form looked like a "4" on the mother's form — possibly because she wrote "7" with a line through the middle ("7"). We speculate

When asked to identify her support network, the mother named the maternal grandmother (M.A.), one maternal aunt (Bi.A.), the paternal grandmother (L.V.), and the paternal aunt (D.L.).

The paternal grandmother (L.V.) and an unidentified paternal relative (described as an aunt but also as a cousin) attended a hearing in October 2021. There is no indication that CFS or the juvenile court made any ICWA inquiry to them.

As already noted, the juvenile court found that ICWA did not apply.

B.    *Applicable Legal Principles.*

Under ICWA and related federal and state law, an "Indian child" is defined as a child who is either (1) a member of a federally recognized Indian tribe, or (2) both the biological child of a member of a federally recognized tribe and eligible for membership in the tribe. (*In re J.S.* (2021) 62 Cal.App.5th 678, 689; accord, 25 U.S.C. § 1903(4), (8); 25 C.F.R. § 23.2; § 224.1, subds. (a), (b).)

"The court [and the] county welfare department . . . have an affirmative and continuing duty to inquire whether a child for whom a petition . . . has been filed[] is or may be an Indian child." (§ 224.2, subd. (a).)  "'This continuing duty can be divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.'  [Citation.]" (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 402.)

---

that the social worker relied on the mother's form and thus dialed "4" when "7" was correct.

Initially, under federal law, the juvenile court "must ask each participant" in a dependency "at the commencement of the proceeding" "whether the participant knows or has reason to know that the child is an Indian child." (25 C.F.R. § 23.107(a) (2016).) In addition, under state law, since January 1, 2019 (Stats. 2018, ch. 833, § 5; see also *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048), the social services agency must "ask[] the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (§ 224.2, subd. (b); see also *id.*, subd. (a).)

"Extended family member" is defined, as relevant here, as an adult "who is the Indian child's[5] grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent . . . ." (§ 224.1, subd. (c), incorporating 25 U.S.C. § 1903(2).)

Next, "[i]f the court [or] social worker . . . has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court [or] social worker . . . shall make further inquiry regarding the possible Indian status of the child . . . ." (§ 224.2, subd. (e).) "[T]he requisite 'further inquiry' 'includes: (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs and

---

5    In the context of the initial duty of inquiry, "the Indian child" must be understood as the *potential* Indian child — i.e., the child who is the subject of the dependency. (See, e.g., *In re J.C.* (2022) 77 Cal.App.5th 70, 78.)

6

State Department of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe.' [Citation.]" (*In re Austin J.* (2020) 47 Cal.App.5th 870, 883; see also § 224.2, subd. (e)(2).)

Finally, in a dependency that could result in a foster care placement or termination of parental rights, if "[t]here is reason to know a child involved in a proceeding is an Indian child," notice of the proceeding must be given to the relevant tribe or tribes. (25 U.S.C. § 1912(a); 25 C.F.R. §§ 23.11(a), 23.111; § 224.3, subd. (a); Cal. Rules of Court, rule 5.481(c)(1).)

The social services agency "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status . . . ." (Cal. Rules of Court, rule 5.481(a)(5).)

"If the court makes a finding that proper and adequate further inquiry and due diligence . . . have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings . . . ." (§ 224.2, subd. (i)(2).) "In the absence of any evidence the [agency] complied with its section 224.2, subdivision (b) duty to inquire of extended family members, [a] juvenile court's finding that ICWA does not apply is error. [Citation.]" (*In re M.M.* (2022) 81 Cal.App.5th 61, 71.)

7

"[T]he parent's failure to object in the juvenile court to deficiencies in the investigation or noticing does not preclude the parent from raising the issue for the first time on appeal from an order entered at any hearing in which the juvenile court determined that ICWA was satisfied or does not apply [citations]." (*In re K.R.* (2018) 20 Cal.App.5th 701, 706.)

C.       *Application to These Facts.*

Here, CFS was aware of at least five extended family members: the paternal grandmother (L.V.), the paternal aunt (D.L.), the maternal grandmother (M.A.), and two maternal aunts (Bi.A. and Br.A.).[6] The paternal aunt (D.L.) denied Indian ancestry.

CFS had phone numbers for the paternal grandmother (L.V.) and one maternal aunt (Br.A.). As the mother identified the maternal grandmother (M.A.) as part of her support network, presumably it could have obtained her phone number from the mother. Similarly, when the social worker tried to call the other maternal aunt (Bi.A.), he had the wrong phone number; however, the mother also identified this maternal aunt as part of her support network and could presumably have supplied the correct phone number. In

---

**6**       For purposes of discussion, we leave aside persons whose relationship was uncertain, namely, alleged grandmother or grandfather F., alleged cousin P.V, and alleged "repres[en]tative" S. We also leave aside the unidentified relative who appeared at the October 2021 hearing; this may well have been paternal aunt (and caretaker) D.L.

sum, CFS had the ability to contact all of these extended family members, but it did not contact any of them.[7]

The fact that the mother and the father denied any Indian ancestry does not excuse a failure to inquire. "By requiring the Department to inquire of a child's extended family members as to the child's possible Indian ancestry, the Legislature determined that inquiry of the parents alone is not sufficient. [Citations.]" (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 431-432.)

CFS does not even argue that its inquiry was sufficient. Rather, it argues only that the error was harmless because, on the mother's side, both the mother and the child's alleged cousin (P.V.) denied Indian ancestry, and on the father's side, both the father and the paternal aunt (D.L.) denied Indian ancestry.

Significantly, this is not an appeal from an order terminating parental rights; rather, it is an appeal from jurisdictional/dispositional orders. Under these circumstances, there is no need to reverse the jurisdictional/dispositional orders themselves; however, because the duty of inquiry is a continuing duty, we must reverse the finding that ICWA does not apply, regardless of prejudice, and remand for further inquiry. (*In re Dominick D.* (2022) ___ Cal.App.5th ___, ___ [2022 Cal. App. LEXIS 722 at p. *9]; *In re S.H.* (2022) 82 Cal.App.5th 166, 177-179.)

---

[7] We also note that CFS was required to make an ICWA inquiry of each child. (§ 224.2, subd. (b).) There is no indication that it did. When the dependency was filed, G.S. was nine and J.S. was five. It is not inconceivable that they might have information about their own Indian ancestry, if any.

## III

## DISPOSITION

The finding that ICWA does not apply is reversed. The juvenile court is directed to order CFS to comply with its inquiry and (if applicable) notice obligations under ICWA and related California law. In all other respects, the orders appealed from are affirmed. Pursuant to the parties' stipulation, the remittitur shall issue immediately. (Cal. Rules of Court, rule 8.272(c)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

SLOUGH
J.